CHARLES SKIBA, INFANT, BY JOHN SKIBA AND MARY SKIBA, HIS NEXT FRIENDS, AND JOHN SKIBA, MARY SKIBA AND ANNA SKIBA, INDIVIDUALLY, RESPONDENTS, v. EDWARD HMIELESKI AND LILLIAN HMIELESKI, APPELLANTS.

HELEN PUHA, INFANT, BY MIKE CHEREPAHAN, HER NEXT FRIEND, AND MIKE CHEREPANAH, INDIVIDUALLY, RESPONDENTS, v. EDWARD HMIELESKI AND LILLIAN HMIELESKI, APPELLANTS.

Submitted October 26, 1929—Decided May 19, 1930.

For the appellants, *Carey & Lane.*

For the respondents, *Elmer E. Brown.*

PER CURIAM.

The above suits were instituted in the Middlesex Circuit Court against defendants-appellants. They were to recover damages alleged to have been sustained by the plaintiffs (occupants of the Skiba car) as a result of a collision between

an automobile owned by the plaintiff John Skiba, and operated by his agent or servant, Charles Skiba, one of the plaintiffs, with a Mack automobile truck owned by the defendants and operated by their agent or servant, John Bonien. The cases were tried together.

After rules to show cause, and in which several of the verdicts were reduced, judgment was entered for the plaintiffs.

There was evidence to go to the jury which justified the verdicts, and a jury question was thus raised.

Harry Romeo, a witness for plaintiff, testified that he was in a parked car at the time and place of the accident, and saw the Skiba car coming down the road towards the front of his car; he also noted the defendant's truck approaching from his rear to the point of the accident; he saw the Skiba car seventy feet away and the truck was about twenty feet behind him, when the truck swerved out to the left-hand side of the road to pass his car and struck the Skiba car when it was three feet on the dirt shoulder of the right-hand side of the road; it was a large truck with a trailer, with a load of sugar, had a big wide body; the truck did not pull out and stay close to his, Romeo's car, and before it came to a stop was away on the other side of the road, and the Skiba car came in contact with it; the truck pulled over the road too far and caused the accident; there was plenty of room for the truck if it had stayed on the road.

There were other witnesses for the plaintiff, who gave evidence making for that side. And this justified the refusal of the nonsuit.

Nor did the court err in denying the defendant's motion for a direction of a verdict. The defendant's witnesses placed the truck on the left-hand side of the road and on a slant across the highway and the trailer sideways; which was improper.

In *Maudsley* v. *Richardson & Boynton Co.,* 101 *N. J. L.* 561, this court held: "In passing upon a motion to nonsuit, the court cannot weigh the evidence, but must take as true all testimony which supports the view of the party against whom the motion is made, and must give him the benefit of all

legitimate inferences which are to be drawn therefrom in his favor; * * * a refusal to nonsuit for failure of proofs will not justify a reversal if the defect be supplied by evidence thereafter taken during the progress of the cause."

And in *Smith* v. *Barnard,* 82 *N. J. L.* 468, 470, this court, speaking by Mr. Justice Parker, said: "Returning to the nonsuit, the situation was this: Plaintiff's wagon was on the right of the road going east, compelled to turn out slightly to the left by a wagon standing at the south curb, and in the act of passing the peddler's wagon, which was going west and about in the middle of the road; defendant's automobile directly behind the peddler's wagon, which obstructed defendant's view. From this and from the fact as the jury might have found, that the automobile turned rather sharply to the left, struck the left fore wheel of plaintiff's wagon at an angle, as testified, and with enough force to throw all three occupants out of it and kill one of them, it was entirely open to the jury to infer that defendant had 'failed to keep a proper lookout and have his automobile under proper control;' and that if he had done either, the accident would not have resulted. As has been said, if the defendant's duty was to pass the peddler's wagon on the left, he was not entitled to do so entirely at the risk of other vehicles with rights equal to his own, and which, coming from the opposite direction, had primarily at least as much right as he to utilize the space to the south of the peddler's wagon. As to such vehicles a duty of reasonable care rested upon him to discover and avoid them; and whether he exercised such care under the circumstances was a question for the jury."

The application of Smith v. Barnard to the case in hand is this: Here John Bonien, driver of the truck, failed to keep a proper lookout and have his automobile under proper control. In fact, he himself testified that when the truck was alongside the parked car he saw the automobile which was damaged, two hundred and fifty feet away; and it must be apparent that if he had had his car under proper control he could have controlled it and the accident would not have resulted; and while he was entitled to pass the parked car

on the left, he was not entitled to do so at the risk of other vehicles coming from the opposite direction, of which the damaged car was one, which primarily at least had as much right as he to use the space or road to the left-hand of the parked vehicle; as to such vehicles, the duty of reasonable care rested upon him to discover and avoid them. Whether he exercised such care under the circumstances was a question for the jury.

From what has gone before it is clear that the judgments under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.