ANGELO MISTRETTA, PLAINTIFF - RESPONDENT, v. GEORGE DOCTERMAN, DEFENDANT, AND THOMAS McCLELLAN, DEFENDANT-APPELLANT.

Submitted May 27, 1932—Decided October 17, 1932.

For the plaintiff-respondent, *Joseph F. A. Rubacky* and *Jack Rinzler*.

For the defendant-appellant, *Thomas McClellan* and *Kellogg & Chance*.

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment entered in favor of the plaintiff upon the verdict of a jury in the Passaic Circuit of the Supreme Court.   The plaintiff-respondent brought the suit against the defendants for injuries alleged to have been sustained as the result of being struck by an automobile owned by the defendant Thomas McClellan and driven by the defendant George Docterman.   The jury rendered a verdict against both defendants and McClellan, the owner, alone appeals.

There was testimony tending to show that on July 18th, 1930, the plaintiff was walking across Summer street, Passaic, from the northerly to the southerly side at or near the Erie railroad grade crossing between Main street and Central avenue, when he was struck by an automobile traveling in an easterly direction on Summer street, about dark, at a rapid rate without lights and without giving any warning of its approach. The driver failed to stop. He speeded on to Central avenue, the next intersecting street, where he turned southerly and disappeared. There was evidence from which the jury could reasonably infer that the car which struck plaintiff was a blue Chevrolet coupe. The defendant McClellan was the owner of a blue Chevrolet coupe, which on the evening of the accident was in the garage and in the possession of the defendant Docterman, a garage man, for the purpose of being repaired. The plaintiff alleges that it was this automobile which ran into him and insists that he clearly established that fact at the trial, and that the trial court properly submitted the case to the jury. Appellant denies that his automobile was in an accident that night and denies that there was sufficient evidence of the identity of his car with the car which was in the accident to justify the trial judge in submitting the case to the jury.

The grounds of appeal are that the trial judge erred in denying appellant's motion for a nonsuit and for direction of a verdict. The motions for nonsuit and for a direction of a verdict as originally made were based upon two grounds, first, that there was no testimony in the case that Docterman was the agent or servant of McClellan; second, that there was no evidence that the automobile driven by the defendant Docterman, struck or came in contact with the plaintiff.

There is no difficulty about the first question. As a matter of fact, the appellant practically abandoned this in restating his motions and has not stressed it in his brief. Docterman testified that McClellan telephoned him about nine-fifteen on the evening of July 18th, 1930, and said that his Packard car "was broke down" and for Docterman to deliver to him the Chevrolet at the United Piece Dye Works at Lodi and

take the Packard back for repairs. Accordingly, Docterman finished the Chevrolet car and drove to Lodi to deliver it to McClellan as per McClellan's directions given to him over the telephone. McClellan did not deny this conversation. It is clear that Docterman was McClellan's agent.

The second question, however, presents more difficulty because of the fact that no witness of the accident directly identified the coupe as McClellan's car. It was described as a blue Chevrolet coupe and that description fitted McClellan's car. The testimony showed that Docterman, after finishing the repairs to the Chevrolet coupe stopped en route to Lodi and at or near the corner of Main and Summer streets, Passaic, picked up a Mrs. Edna VanHassel Petrie and proceeded easterly along Summer street across the Erie railroad crossing and turned to the right or south on Central avenue on his way to Lodi.

Max Glick, a witness produced by plaintiff, testified that he was sitting on his front porch and heard a bang near the tracks of the Erie railroad, looked up and saw a car coming down. It turned around the corner on Central avenue and speeded away. He went to the spot where he heard the bang and found the plaintiff. The car was a Chevrolet coupe. The plaintiff, himself, testified that he was attempting to cross Summer street at a point near the Erie railroad between Main street and Central avenue when he was struck by an automobile which did not give any signal of its approach; that he was knocked down and remembers nothing else about the accident.

James Catania, testifying for the plaintiff, stated that he was sitting on his front porch facing Summer street about one hundred feet from the accident and saw a car coming down the street and saw someone drop right near the railroad crossing; that there was no other car at or near there at the time, that it came along Summer street toward Central avenue where it made a right turn and disappeared; that it was just about getting dark and arc lights were lit at the time, and the automobile was a small car.

A Miss Kraus, who lived on Summer street about half a

block away from the railroad crossing, saw a blue Chevrolet coupe stop on Main street near Summer street, and saw Edna VanHassel Petrie, whom she knew very well, enter the car, but she did not notice who the driver of the car was. After Mrs. VanHassel Petrie entered the blue Chevrolet coupe, it immediately proceeded in an easterly direction along Summer street toward the Erie railroad crossing, and Miss Kraus then continued on her way to her home about half a block away, and within a minute or two after she had entered the hallway she was informed by another lady that there was an accident down the street near the railroad crossing, and she immediately went to the grade crossing but the injured person had already been taken away, although she saw the blood on the railroad tracks. Mrs. VanHassel Petrie did not testify and it was stated that she no longer lived in Passaic. Miss Kraus fixed the time of the accident at about quarter after eight or half-past eight in the evening and yet she gave this time as an estimate, insisting in answers to many questions that she didn't remember the time, and finally when pressed for an answer said that she "imagined" it was about quarter after eight or half-past eight in the evening and that it was just dark, and she further stated that only a couple of minutes elapsed between the time she saw Mrs. VanHassel Petrie enter the car on Summer street and the time when she learned about the accident.

The defendant Docterman admitted that the car that he drove was a blue Chevrolet coupe; that he left his garage with his coupe at nine-forty-three P. M.; that he picked up Mrs. VanHassel Petrie, who entered the car at Main street and Summer street, and that he then turned into Summer street, proceeding easterly over the railroad crossing and when arriving at Central avenue, turned to the right and traveled southerly on Central avenue. He also stated that he stopped at the corner of Main and Summer streets and proceeded along Summer street over the Erie railroad crossing and entered Central avenue only once that night. He denied that he struck plaintiff or had any accident at all.

It is clear that the witnesses who fixed the time of this acci-

dent at about half-past eight or quarter-past eight were not attempting to fix it definitely, but gave their impressions and recollections of the time as to when it happened. The trial occurred more than sixteen months after the accident. We think that the testimony of the witnesses clearly raised a jury question and that the jury was justified in inferring that the car of the appellant was at the scene of the accident at the time of the accident in spite of the discrepancy in the testimony of Docterman and plaintiff's witnesses as to the time. The testimony of Dr. Marshall was that the plaintiff was admitted to the hospital about ten-thirty P. M., and taking into consideration that some time must have intervened from the time the plaintiff was struck before he was placed in an ambulance and taken to a hospital, it would seem as if the accident might have occurred between nine-forty-five and ten-thirty P. M. Allowance could be made for the fact that some of the witnesses may have been referring to standard time and others to daylight-saving time. The testimony of Miss Kraus that the accident happened within a couple of minutes after she saw Mrs. VanHassel Petrie enter the blue Chevrolet coupe and proceed easterly along Summer street, coupled with the admission of Docterman that he drove Mc-Clellan's blue coupe that very evening and picked up Mrs. VanHassel Petrie and proceeded in the very direction which the witnesses testified the blue coupe which struck the plaintiff traveled, was sufficient with the other testimony to justify the court submitting the case to the jury.

We conclude therefore that the judgment should be affirmed.

*For affirmance*—The CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.