BARBARA USHER, Appellee, v. GEORGE E. STAFFORD et al., Appellants.

No. 44901.

November 16, 1939.

Hershel G. Langdon and E. C. Corry, Jr., for appellee.

Bradshaw, Fowler, Proctor & Fairgrave, for appellants.

Sager, J.—About 11:20 p. m. on February 18, 1938, Robert Weaver, 17 years old, was driving a V-8 Ford south on arterial highway No. 65 with plaintiff, 21 years old, beside him in the front seat. In the rear seat was one Harold Trickey, 18 years old, and a Miss Jensen. The car was moving at a speed admitted by Weaver to be between 55 and 60 miles per hour, and estimated by another witness at 75 to 80 miles per hour. On reaching a place approximately 2½ miles north of the city limits of Des Moines, they came upon the defendant, George E. Stafford, an employee of his co-defendant, Des Moines Gas Company, backing a half-ton truck out of the driveway of the Harry J. Ward residence. As to whether Stafford had com-

pleted the move of backing, and had started south, or whether he had gone past and over the middle of the pavement, is the subject of dispute. Whatever the fact may be in this regard, when the Ford came within five to seven car lengths of the truck, Weaver sounded his horn and Stafford stopped. Thereupon the Ford turned to the right onto the shoulder and into the ditch, causing plaintiff's injuries. Stafford testified that the east half of the pavement was clear, and that Weaver could and should have taken the left turn instead of the right; and Weaver claims, inferentially at least, that this was not so.

It was stipulated that Stafford was an employee of the Gas Company, and that the truck he was operating at the time of the accident was owned by it. Stafford's duties kept him employed from 3:30 p. m. until midnight. He is designated as "order man" or "trouble-shooter", his work being generally to answer complaints about the operation of various gas appliances. For that purpose he was furnished a truck by the employer.

One Ward was in the same service as was Stafford, the latter's shift beginning when the former's ended, each using the same truck. On the night of the accident, Ward had completed his work and was listening with Stafford to a radio report of a prize fight. While so engaged a trouble call came from Waterbury Circle in the west part of Des Moines. Stafford answered the call as was his duty. Ward went with him. Upon the completion of the call, Stafford started his return trip which should have taken him to the company shop. Instead he decided to take Ward to his home at Marcusville, 2½ miles north from the company's nearest gas customer, and about 5 miles north of where he would have been had he returned directly to the company's shop.

Stafford's only purpose was to take his fellow employee home, something that he testified he had done on other occasions. The record discloses no knowledge on the part of the company of any such practice, nor of his ever having done so, until three or four days before the accident. About that time a check disclosed that the truck was showing a much larger mileage in Stafford's shift than in the others. Being called to account, Stafford told Beattie, his superior, what he had been doing. He was thereupon ordered to desist from any such practice. It is the claim of the defendant company that no employee was

authorized to use the trucks for any but the employer's business, and no consent to the contrary use had ever been given. On this record, the defendant Gas Company moved for a directed verdict, among other grounds for the reason that the record affirmatively shows that it had never given consent to the use of its truck for the purpose for which it was used on the night of the accident, and that it affirmatively appeared that the truck was being used contrary to the specific instructions of the Gas Company. The motion was overruled and the case went to a jury, resulting in a verdict of $1,000 against both defendants, and both appeal.

The court refused certain requested instructions and on its own motion gave instructions, of which one (No. 11) is the subject of complaint. We examine the appeal of Stafford first.

On the question of consent, or lack thereof, to the use of the truck, the Gas Company proceeds alone in argument. Beyond that it joins with Stafford in his contentions, on the theory that if the servant be found free from fault there can be no liability on the part of the employer. It may well be that Stafford was not advantaged by the joinder of forces where he might have gone alone. Thus he joined with the Gas Company in asking for this, among other instructions:

"You are instructed that it is the duty of a person driving a motor vehicle on a highway to drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and that no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring the automobile to a stop within the assured clear distance ahead, that is, within the distance that discernible objects may be seen on the highway ahead, either at nighttime or in the daytime. .

"If you find from the evidence that Robert Weaver, in the operation of the automobile in which the plaintiff was riding, failed or neglected to operate the automobile in the manner indicated, the said Robert Weaver would be guilty of negligence; and if you find that such negligence was the sole and proximate cause of the injuries sustained by the plaintiff, then your verdict must be for the defendants."

With this went other requests on the same theory with reference to speed, lookout and control. This request foreclosed Stafford's right to complain of an instruction (No. 11) given in conformity therewith. In re Iwers Estate, 225 Iowa 389, 280 N. W. 579.

But Stafford argues that the court erred in instructing as it did in instruction No. 11 by telling the jury the burden was upon the defendants to make proof of the affirmative matters pleaded in defense by the Gas Company alone. We think this criticism hypercritical under this record. This defense was conducted jointly and the evidence offered by appellants was not tendered separately. The Gas Company by its pleading had undertaken a burden which the trial court properly assigned to it. The verdict went against both defendants, a finding which established as a fact that Weaver's negligence, if any, was not the *sole* proximate cause of plaintiff's injury. It should be kept in mind that it was not a question of plaintiff-appellee's contributory negligence but a controversy as to whether Weaver's or Stafford's negligence was the sole cause of the accident. As bearing on the question, see Johnson v. McVicker, 216 Iowa 654, 247 N. W. 488; Griffin v. Stuart, 222 Iowa 815, 270 N. W. 442; Gregory v. Suhr, 224 Iowa 954, 277 N. W. 721.

The question of fact as to the negligence, or lack of negligence, of the parties involved was properly submitted to the jury, and with its finding we may not interfere, whatever our views might be if we were triers of the facts.

Stafford further complains that the court erred in refusing to give requested instruction No. 5. This was to the effect that it was "the duty of the driver of a vehicle on the public highway, when overtaking another vehicle proceeding in the same direction, to pass to the left thereof", in compliance with the statutory provision in that regard. The instruction goes on to say that if under the evidence Weaver failed to operate his car in the manner indicated, and such negligence was the sole cause of the injuries, the verdict must be for the defendants. The requested instruction is perhaps a correct statement of the law, but the court was right in refusing to give it because it assumed as established certain disputed questions of fact. We find no prejudicial errors against Stafford.

On Des Moines Gas Company's appeal, we reach a

different result. We quote the following from appellant Gas Company's argument as a fair summing up of the evidence of this branch of the case:

"On the night of the accident out of which this lawsuit arises, Stafford was to drive this defendant's truck to a specific address in Waterbury Circle, Des Moines, perform his work there, and then return to the company's shop at East Fifth street, Des Moines, to await further orders or calls. Contrary to his general and specific instructions, Stafford drove this defendant's truck, after the completion of his particular call, to a point some five miles from the shop outside the limits of the City of Des Moines in another direction from the shop and to a vicinity not even served by the company, for the sole purpose of taking his co-employee home, the latter having been through work for several hours."

Does such a state of facts bring the Gas Company within the provisions of section 511, chapter 134, Acts of the Forty-seventh General Assembly? We have had this question before us on several occasions when this statutory requirement appeared as section 5026 which was in effect the same. Many of our decisions are cited but we do not stop to analyze or explain them. These cases belonging to the so-called "family car cases" are not controlling except as they are guides in like cases: Landry v. Oversen, 187 Iowa 284, 174 N. W. 255; Lange v. Bedell, 203 Iowa 1194, 212 N. W. 354; Wolfson v. Jewett Lumber Company, 210 Iowa 244, 227 N. W. 608; Allbaugh v. Ashby, 226 Iowa 574, 284 N. W. 816; and Olinger v. Tiefenthaler, 226 Iowa 847, 285 N. W. 137. The case before us is more like those wherein no consent was given, or if given the limits of consent were exceeded: Robinson v. Shell Petroleum Company, 217 Iowa 1252, 251 N. W. 613; Hunter v. Irwin, 220 Iowa 693, 263 N. W. 34; Rowland v. Spalti, 196 Iowa 208, 194 N. W. 90; Curry v. Bickley, 196 Iowa 827, 195 N. W. 617; Heavilin v. Wendell, 214 Iowa 844, 241 N. W. 654; and Mitchell v. Automobile Underwriters, 225 Iowa 906, 281 N. W. 832.

That the truck driven by Stafford was owned by the Gas Company is admitted as is the fact that he was an employee, permitted and required by his employer to drive this truck within the scope of his employment. The sole question before us is: Did this relation and permission to use this truck in the

furtherance of the company's business extend to and carry with it a consent that Stafford use it at the time and place and for the purpose he did on the night of this accident so as to make the Gas Company liable? We hold that it did not. Appellee contends that the terms "within the scope of his employment" and "consent" are not synonymous. This may be admitted without changing the result. It gets down to a question of consent, express or implied, to the use of the car. In this case express consent is directly negatived; and no basis for implied consent appears unless it be the fact that the Gas Company did not deduct from Stafford's pay the time his shift had yet to run, or on the fact that the Gas Company would have repaired the damage, if damage had resulted to its truck. These questions, under this record, seem too trivial to entitle them to serious consideration.

This, from 5 Am. Jur., Automobiles, section 378, states the applicable rule as we construe the statute:

"An employer who furnishes an employee with an automobile for his use in expediting the employer's business is not liable for injuries resulting from the employee's negligence in the use of the machine for his own purposes, not connected with the master's business, as such use of the automobile is not within the scope of the agent's employment."

Appellee lays some stress upon Greene v. Lagerquist, 217 Iowa 718, 252 N. W. 94, but it is readily distinguishable. In that case the accident happened while the car was being driven with the consent of a company's employee for the very purpose for which it had been leased to the defendant Biscuit Company. Other facts and circumstances clearly made that case one for the jury.

Some confidence, too, is placed in Eterna v. Dodge, 239 Mich. 421, 214 N. W. 413. This case, while interesting, is likewise distinguishable from the case at bar. There the accident happened while the driver of the car was engaged in complying with the orders of the superior officer who employed and had the right to discharge him. Moreover the court was evenly divided, with weight of legal argument in favor of the dissenting opinion.

All of the cases cited by the parties have been examined, but none of them require a finding that, under the circumstances

450

before us, the defendant Gas Company could be held liable. The case of Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S. W. 282, 122 A. L. R. 854, is precisely in point though the departure from the line of employment was much less than Stafford's. If further light on the state of the law in this class of cases be sought, it will be found in the note appended to that case, 122 A. L. R. at page 859, and the earlier annotations which it supplements.

We, therefore, hold that the trial court was in error in not directing a verdict for that defendant. The cause is, therefore, affirmed on Stafford's appeal and reversed on that of appellant Des Moines Gas Company.—Affirmed on Stafford's appeal; reversed on that of the Gas Company.

MITCHELL, STIGER, HALE, BLISS, and MILLER, JJ., concur.